JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 22-0858 JGB (SPx)** | Date | December 7, 2023 |
| Title | *Eula Elazouzi v. Aetna Life Insurance Company, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** FINDINGS OF FACT AND CONCLUSIONS OF LAW (IN CHAMBERS)

      This Employment Retirement Income Security Act ("ERISA") action concerns the denial of Plaintiff Eula Elazouzi's ("Plaintiff") claim for coverage of a roux-en-y gastric bypass ("RYGB") procedure, pursuant to Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Dkt. No. 1 at 1-2.) A bench trial was scheduled to commence on July 25, 2023. Plaintiff seeks the recovery of benefits under an ERISA-governed benefit plan and the enforcement of her rights. (Id. at 2.) Defendant Aetna Life Insurance Company ("Defendant") operates as the administrator of claims made under the ERISA-governed plan. (Id. at 3.)

      On June 2, 2023, the parties each filed trial briefs. ("Plaintiff's Brief," Dkt. No. 28; "Defendant's Brief," Dkt. No. 29.) On June 30, 2023, the parties each filed responsive trial briefs. ("Plaintiff's Opposition," Dkt. No. 33; "Defendant's Opposition," Dkt. No. 34.) The parties agreed that no witnesses were to be called and the Court granted their stipulation to vacate the pretrial conference and trial dates, and to proceed only with the Administrative Record ("AR," Dkt. No. 32). (Dkt. Nos. 20–21.) Upon reviewing the parties' trial briefs and the AR, the Court determines that argument is unnecessary for decision on this matter.

//
//
//

# I.   FINDINGS OF FACT[1]

"In bench trials, Fed. R. Civ. P. 52(a) requires a court to 'find the facts specially and state separately its conclusions of law thereon.'" Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir. 1986) (quoting Fed. R. Civ. P. 52(a)).  "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision.  This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." Id. (citations omitted).  The following constitutes the findings of fact based on the Administrative Record.

## A.  Plan Terms

In October 2021, at the time of the procedure at issue, Plaintiff was covered as a beneficiary of Infosys Limited Health & Welfare Benefit Plan (the "Plan").  (AR at 2.)  The Plan covers only certain services.  It states, in part:

> Your plan provides **covered services**.  These are:
>
> - Described in this section.
> - Not listed as an exclusion in this section or the *General plan exclusions* section.
> - Not beyond any limits in the schedule of benefits.
> - **Medically necessary**.  See the *How your plan works – Medical necessity and precertification requirements* section and the *Glossary* for more information.

(AR at 486.)  Under the "General plan exclusions" section, the Plan lists "Experimental or investigational drugs, devices, treatments or procedures unless otherwise covered under clinical trials."  (Id. at 510.)  The Plan defines experimental or investigational as:

> Drugs, treatments or tests not yet accepted by **physicians** or by insurance plans as standard treatment.  They may not be proven as effective or safe for most people.
>
> A drug, device, procedure, or treatment is **experimental or investigational** if:
>
> - There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved.
> - The needed approval by the FDA has not been given for marketing.

---

[1] The Court has elected to issue its decision in narrative form because a narrative format more fully explains the reasons behind the Court's conclusions, which aids appellate review and provides the parties with more satisfying explanations. Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

- A national medical or dental society or regulatory agency has stated in writing that it is **experimental or investigational** or suitable mainly for research purposes.
- It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulatory and other official actions and publications of the FDA and Department of Health and Human Services.
- Written protocols or a written consent form used by a facility **provider** state that it is **experimental or investigational**.

(Id. at 539-40.) The Plan also defines what is considered medically necessary. (Id. at 541.) It states, in part:

> Health care services that we determine a **provider**, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing, or treating an illness, injury, disease or its symptoms, and that we determine are:
>
> - In accordance with generally accepted standards of medical practice
> - . . .
>
> Generally accepted standards of medical practice means:
>
> - Standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community
> - Following the standards set forth in our clinical policies and applying clinical judgment

(Id. at 541.) Finally, under a section entitled "Medical necessity and precertification requirements," the Plan lists "[t]ypes of services that require precertification," including "[o]besity surgery (bariatric)." (Id. at 516-17.) This section also discusses Defendant's clinical policy bulletins ("CPB"):

> Our clinical policy bulletins explain our policy for specific services and supplies. We use these bulletins and other resources to help guide individualized coverage decisions under our plans. You can find these bulletins and other information at https://www.aetna.com/health-care-professionals/clinical-policy-bulletins.html.

(Id. at 517.)

B. Clinical Policy Bulletins

Defendant's CPB Number 0157 for Obesity Surgery provides:

> Aetna considers open or laparoscopic short or long-limb Roux-en-Y gastric bypass (RYGB) . . . medically necessary when the selection criteria listed below are met. . . .
>
> 1. For adults aged 18 years or older, presence of persistent severe obesity, documented in contemporaneous clinical records, defined as *any* of the following:
>
>    a. Body mass index (BMI) (see appendix) exceeding 40 measured prior to preoperative preparatory program; *or*
>    b. BMI greater than 35 measured prior to preoperative preparatory program in conjunction with *any* of the following severe co-morbidities.

(Id. at 584-85.) CPB Number 0157 further defines "Experimental and Investigational Bariatric Surgical Procedures" as:

> Aetna considers each of the following procedures experimental and investigational because the peer-reviewed medical literature shows them to be either unsafe or inadequately studied:
>   . . .
> - LASGB, RYGB, and BPD/DS procedures not meeting the medical necessity criteria above.
> - . . .
> - Roux-en-Y gastric bypass as a treatment for gastroesophageal reflux in non-obese persons.

(Id. at 590-91.)

**C. Plaintiff's Medical History**

In May 2012, Plaintiff underwent a laparoscopic hiatal hernia repair and Nissen fundoplication. (Id. at 110, 189.) The procedure resolved her health problems for approximately three years, until she began feeling a burning sensation in her chest in 2015. (Id. at 189.) By 2018, she experienced worsening abdominal pain and gas. (Id. at 110.) Her hiatal hernia recurred, and Brian Smith, M.D. re-repaired her hiatal hernia and redid her fundoplication in December 2018. (Id.)

Initially, the surgery was a success, but Plaintiff began experiencing chronic epigastric pain, gas, and bloating in 2019. (Id. at 113.) The abdominal pain and gas worsened throughout 2020 and 2021. (Id.) On August 81, 2021, Plaintiff was admitted to San Antonio Regional Hospital with complaints of dizziness, lightheadedness, sweating, dark black stool, and abdominal pain. (Id. at 161.) She underwent an esophagogastroduodenoscopy on August 21, 2021. (Id. at 167-68.) On the same day, she was diagnosed with upper GI bleeding, acute gastritis with bleeding, and anemia due to acute blood loss and was discharged. (Id. at 139.)

On August 30, 2021, Plaintiff visited Michael Sedrak, M.D., seeking possible treatment for her gastrointestinal problems.  (Id. at 129.)  Dr. Sedrak performed an upper GI contrast study, which produced findings consistent with a slipped Nissen fundoplication.  (Id. at 131.)  He recommended a "surgical treatment[,] most likely takedown of the Nissen and conversion to a gastrectomy with gastrojejunal reconstruction[,] given the previously failed Nissen redo and severity of the current symptoms."  (Id. at 132.)

On September 9, 2021, Plaintiff visited Eleanor Yang, M.D. in Dr. Smith's office.  (Id. at 117.)  Dr. Yang recommended a "Roux-en-Y gastric bypass for refractory acid reflux and history of two failed fundoplications/hiatal hernia repairs."  (Id. at 116.)  Dr. Smith agreed with Dr. Yang's recommendation.  (Id. at 117.)

**D. Initial Claim and Appeals**

   **1. Initial Claim**

On September 23, 2021, Dr. Smith requested precertification for Plaintiff's laparoscopic RYGB and inpatient stay.  (Id. at 22-45.)  Defendant denied the request on October 8, 2021, stating, "[w]e used the Clinical Policy Bulletin (CPB): Obesity Surgery.  Based on CPB criteria and the information we have, we're denying coverage for the requested obesity surgery.  Medical studies have not proven this procedure to be safe and effective to treat your obesity condition."  (Id. at 3.)

On October 9, 2021, Defendant's Medical Director, Susan Ricciardi, M.D., also reviewed the precertification request and denied the RYGB procedure.  (Id. at 40.)  In her denial, she wrote, "[m]ember does not have Bariatric Coverage, however, request is non-bariatric in nature.  Requested Procedure possible Experimental and Investigational."  (Id.)  She also stated, "[p]er CPB, Roux-en-Y gastric bypass as a treatment for gastroesophageal reflux in non-obese persons is considered experimental and investigational and, as such, is not eligible for coverage."  (Id.)

Defendant also offered a peer-to-peer consultation.  (Id. at 39.)  On October 14, 2021, Richard Morgan, D.O. (a physician hired by Defendant to review Plaintiff's claim) spoke with Dr. Smith.  (Id. at 38.)  After the conversation, Dr. Morgan recorded: "I advised him that this was denied as experimental and investigational for non-obese patients. . . . He stated that a short limb Roux-en-Y then becomes the only successful way to repair the problem."  (Id.)  Dr. Morgan also wrote: "I stated that this would be best to go to appeal . . . I feel like there is a good chance of overturn of the denial on appeal and I strongly recommend that the denial is overturned."  (Id.)

   **2. Level One Appeal**

Dr. Smith submitted a Level One appeal of Defendant's denial on October 15, 2021.  (Id. at 57.)  In it, he noted that Plaintiff's Body Mass Index ("BMI") was 32.14 and that "a Laparoscopic Roux-en-Y Gastric Bypass is indicated . . . [it] is the only option remaining for her

reflux problems." (Id. at 259-60.) In the appeal, Dr. Smith also noted that Plaintiff's hiatal hernia was 2 centimeters. (Id. at 259.)

On October 22, 2021, Heather Pankop, Defendant's Appeal Nurse Consultant, reviewed the appeal and wrote, "[P]er the CPB, Roux-en-Y gastric bypass as a treatment for gastroesophageal reflux in non-obese persons is considered experimental and investigational. However, Dr. Morgan . . . strongly recommended [overturning] the appeal. . . . Defer to MD for final determination." (Id. at 240.)

On October 25, 2021, Sarah Phillips, M.D. (Defendant's Medical Director) denied the Level One appeal. (Id. at 241.) She wrote: "The basis for this determination is that this member has gastroesophageal reflux disease. This member's BMI is 32. The member has failed conservative management. . . . Aetna allows for Roux-en-Y gastric bypass for gastroesophageal reflux disease in obese patients who have failed conservative management. However, the member does not have documented esophagitis and the hiatal hernia size is not described." (Id.)

### 3. Level Two Appeal

Dr. Smith submitted a Level Two appeal of Defendant's denial on November 9, 2021. (Id. at 110-11.) He again stated: "It is my professional opinion that a Laparoscopic Roux-en-Y Gastric Bypass surgery with concurrent re-repair of her hiatal hernia is indicated in this case, and the only prudent option remaining for her reflux problems." (Id. at 111.)

On November 24, 2021, Lori Swenson, M.D. (Defendant's Medical Director) upheld the denial. (Id. at 244-45.) In her explanation, she wrote, "per the CPB, the requested procedure is considered experimental and investigational for treatment of persistent [gastroesophageal reflux disease] following antireflux surgery. This member's plan does not cover procedures that are considered to be experimental and investigational." (Id. at 245.)

Defendant informed Dr. Smith and Plaintiff of the denial in a letter dated November 24, 2021. (Id. at 571-72.) The letter indicated that the procedure was denied because it was "experimental or investigational" and cited the CPBs. (Id. at 573.)

### 4. External Review

On December 19, 2021, Plaintiff submitted a request for external review of her claim's denials. (Id. at 1035-36.) In it, she states, "I am requesting an overturn of this denial as I can no longer tolerate the pain that I have in my stomach. . . . Denial of this surgery places me at a high risk of additional esophageal problems including cancer." (Id. at 1036.) She also writes, "there is no other option available to me. . . . [A] Roux-en-Y Bypass surgery is my ONLY remaining option for my reflux problems." (Id.)

On December 27, 2021, Defendant sent the external review request to Independent Medical Expert Consulting Services Inc. ("IMECS"). (Id. at 1038-39.) IMECS affirmed

Defendant's denial of Plaintiff's claim on January 3, 2022, on the basis that the procedure was "experimental/investigational." (Id. at 424.) In its report, IMECS listed Plaintiff's diagnosis as "Diaphragmatic Hernia Without Obstruction Or Gangrene Gastro-esophageal Reflux Disease Without Esophagitis." (Id. at 425.) The report also stated, "[t]he patient does not have a hiatal hernia," and RYGB "is not an established therapy for this patient's condition." (Id. at 428.)

Defendant informed Plaintiff of IMECS' decision on January 3, 2022, and noted that external review is the final level of review available under the Plan. (Id. at 416-23.) Plaintiff filed this action on May 23, 2022. ("Complaint," Dkt. No. 1.)

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

Under ERISA, a beneficiary or plan participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2006). The Court reviews benefits denials de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits"; if the plan does grant such discretionary authority, the Court reviews the administrator's decision for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Salomaa v. Honda Long Term Disability Plan, 637 F.3d 958, 965 (9th Cir. 2011). Here, the parties agree that the controlling standard of review is de novo. (Plaintiff's Brief at 13; Defendant's Brief at 15.)

A court employing de novo review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). The Court "give[s] no deference to the administrator's decision to deny benefits." Id. at 966. Alternatively, when a claimant has been denied a full and fair review, the court has the discretion "to remand . . . so the claimant gets the benefit of a full and fair review." Schwartz v. Hartford Life & Accident Ins. Co., 2020 U.S. Dist. LEXIS 39581, at *14 (N.D. Cal. Mar. 6, 2020), citing Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1035 (9th Cir. 2006).

In reviewing the Administrative Record, "the Court evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010). Plaintiff bears the burden of showing, by a preponderance of the evidence, that her claim is covered by the Plan. See Muniz v. Amec Const. Management, Inc., 623 F.3d 1290, 1294 (9th Cir. 2010).

//
//
//

B.  Discussion

The Court applies de novo review.  Accordingly, no deference is given to the claim administrator's decision, and the Court merely evaluates the persuasiveness of each side's case and determines if Plaintiff has adequately established that her claim is covered under the Plan.

After considering the evidence, the Court finds that Plaintiff has carried her burden of establishing that her claim is not excluded under the Plan as "experimental and investigational." Defendant denied Plaintiff's claim on the basis that the RYGB procedure she seeks is "experimental and investigational," relying on its CPBs for its determination.  (AR at 40, 240, 573; Defendant's Brief at 6 ("Plaintiff was informed during the administrative process that the denial was based on a CPB.").)  Plaintiff presents three arguments: (1) Defendant improperly relied on the CPBs in its denial; (2) Defendant did not fairly engage with Plaintiff's doctors; and (3) Defendant improperly changed its basis for denying the claim.  (See Plaintiff's Brief.)  The Court addresses each of these arguments in turn.

First, the Court must rely on the Plan's language to determine if Plaintiff's claim is covered.  See US Airways, Inc. v. McCutchen, 569 U.S. 88, 100-01 (2013) ("The statutory scheme, we have often noted, is built around reliance on the face of written plan documents . . . The plan, in short, is at the center of ERISA.") (citations omitted); CIGNA Corp. v. Amara, 563 U.S. 421, 435-36 (2011) ("The statutory language speaks of *enforc[ing]* the terms of the plan, not of *changing* them.") (citations omitted) (emphasis in original).  Here, the Plan only covers treatments that are "[n]ot listed as an exclusion in this section or the *General plan exclusions* section." (AR at 486.)  It also only covers procedures that are "medically necessary." (Id.)  Under the "General plan exclusions" section, the Plan lists "Experimental or investigational drugs, devices, treatments or procedures." (Id. at 510.)  Plaintiff argues that the Plan's language governing experimental or investigational procedures does not incorporate the CPBs, and therefore that Defendant improperly relied on the CPB for experimental and investigational bariatric surgery in excluding Plaintiff's claim.  (Plaintiff's Brief at 14.)  The Court agrees.

Defendant's reasoning for denying Plaintiff's claim as experimental is as follows.  The Plan explicitly excludes services that are experimental and investigational in its "General plan exclusions" section.  (AR at 486.)  In a section entitled "Medical necessity and precertification requirements," the Plan references and links Defendant's CPBs.  (Id. at 517.)  CPB Number 0157 for obesity surgery (including RYGB) defines obesity in adults as a BMI exceeding 40, or a BMI exceeding 35 paired with a severe co-morbidity.  (Id. at 584-85.)  Plaintiff's BMI, as stated by her doctor, was 32.14 at the time of her claim—she is therefore considered non-obese under the CPB's definition.  (See id. at 259-60.)  The same CPB for obesity surgery includes, in its list of experimental and investigational procedures, RYGB "as a treatment for gastroesophageal reflux in non-obese persons"—the very procedure Plaintiff is seeking.  (See id. 590-91.)  As such, Plaintiff's procedure is considered experimental and investigational under the Plan and is not covered.

The issue with Defendant's argument, as Plaintiff articulates, is that the Plan's definition of "experimental and investigational" procedures never references or mentions the CPBs upon which Defendant relies. (Id. at 539-40.) The CPBs are only discussed in three places in the Plan: a policy related to medications, the glossary definition of "medically necessary," and the "Medical necessity and precertification requirements" section—none relate to the Plan's "experimental and investigational" exclusion. (See id. at 499, 517, 541.) The Plan's explicit definition of "experimental and investigational" lists five restricting criteria: outcome data, FDA marketing approval, a national medical or dental society written statement, the procedure's clinical trial phase, and the procedure's categorization in written protocols or consent forms used by a facility provider. (Id. at 539-40.) Defendant makes no argument that, under only the five criteria listed in the Plan itself, Plaintiff's procedure should be excluded as "experimental." (See Defendant's Brief.)

Rather, Defendant argues that the CPBs are incorporated broadly into the entire Plan by one-off reference in the "Medical necessity and precertification requirements" section—and therefore they were properly considered in the "experimental and investigational" determination. (Defendant's Brief at 2.) But the Plan explicitly refers to the CPBs in the sections defining medical necessity, and notably leaves out reference to the CPBs in the section defining "experimental and investigational." If Defendant intended to define "experimental and investigational" using the CPBs, it could have explicitly referred to the CPBs in that part of the Plan, as it did in other parts. See Estate of Dick by and through Dick v. Deseret Mutual Benefit Administrators, 2023 WL 2071523, at *5 (D. Or. Feb 17, 2023) ("[I]f Deseret Mutual had intended for the Medical Policy to define the types of brachytherapy that are covered versus excluded expenses, it could have referred to the Medical Policy in the Plan as it did in other sections.").

Moreover, were the Court to find that the reference to the CPBs in the "Medical necessity and precertification" section incorporates them into the entire Plan, it would render useless the mention of CPBs in the "medically necessary" definition. Such a finding is antithetical to principles of contractual interpretation. See Gilliam v. Nevada Power Co., 488 F.3d 1189, 194 (9th Cir. 2007) ("[W]e endeavor to interpret each provision consistent with the entire document such that no provision is rendered nugatory."). The Court therefore interprets the Plan as incorporating the CPBs only into its definition of "medically necessary," by reference in the "Medical necessity and precertification" section and in the glossary definition of "medically necessary." (See AR at 517, 541.) The CPBs are not incorporated into the Plan's definition of "experimental and investigational" procedures. (See id. at 539-40.)

Defendant cites a case from this district, Tabitha Sanchez v. ExxonnMobil Medical Plan, to support its reliance on the CPBs. See Tabitha Sanchez v. ExxonnMobil Medical Plan, et al., 2022 WL 17814645 (C.D. Cal. Dec. 5, 2022). There, Defendant denied a claim as not medically necessary based on its CPBs, and the court upheld Defendant's denial. See id. at *15. But the plan in question explicitly incorporated the CPBs in its definition of medical necessity and granted Defendant permission to consider the CPBs "[w]hen determining medical necessity."

Id. at *2. The definition of "experimental and investigational" here does not mention the CPBs, let alone give Defendant explicit leave to consider them in its decision.

As the CPBs are not incorporated into the Plan's "experimental and investigational" definition, Defendant's reliance on them was improper. An ERISA administrator can only rely on extrinsic documents to interpret or apply a plan document when there is "a silence or ambiguity in the plan that the extrinsic document cures." Estate of Dick by and through Dick, 2023 WL 2071523, at *4; see also Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1143-44 (9th Cir. 2002). That is not the case here. As previously discussed, the Plan itself provides five criteria by which to determine whether a procedure is "experimental or investigational"—reliance on the extrinsic CPBs was not needed.

In relying only on the CPBs, Defendant did not provide "a basis for its denial that is supported by the plain language of the Plan." See Estate of Dick by and through Dick, 2023 WL 2071523, at *4; Defendant's Brief at 2; AR at 3 ("We used the Clinical Policy Bulletin (CPB): Obesity Surgery."). But Plaintiff provides ample evidence under the plain language of the Plan—namely, the five factors defining "experimental and investigational"—that her procedure is not excluded. The first restricting criterion under the Plan's definition excludes procedures where "[t]here is not enough outcome data available from controlled clinical trials published in the peer reviewed literature to validate its safety and effectiveness for the illness or injury involved." (AR at 539-40.) Here, Plaintiff's doctor provided various clinical studies supporting the procedure's safety and effectiveness. (AR at 261-67.) The Plan's second and fourth restricting criteria relate to FDA approval of the procedure—RYGB has been approved by the FDA for over 20 years. See E.L. v. Scottsdale Healthcare Corp. Health Plan, 2011 WL 3489644, at *2 (D. Az. Aug. 9, 2011) (noting that Medicare covered RYGB as early as 1996). The third restricting criterion excludes procedures for which a "national medical or dental society . . . has stated in writing that it is experimental or investigational." (AR at 539-40.) Neither party has presented evidence of such a statement. (See generally id.) Finally, the fifth restricting criterion asks whether "written protocols or a written consent form used by a facility provider state that it is experimental or investigational." (Id. at 539-40.) Here, Plaintiff's doctors have stated repeatedly that RYGB is commonly used and appropriate for her condition. (Id. at 38, 259-60.)

For the foregoing reasons, the Court concludes that Defendant improperly relied on the CPBs in denying Plaintiff's procedure. The Court also concludes that Plaintiff's claim is not excluded under the Plan as "experimental or investigational." As such, the Court does not reach Plaintiff's second and third arguments related to Defendant's denial of her claim.

As Defendant incorrectly denied Plaintiff's claim based solely on its "experimental and investigational" determination, Plaintiff was denied "the benefit of a full and fair review." Schwartz, 2020 U.S. Dist. LEXIS 39581, at *14. Coverage under the Plan also requires that a procedure is deemed "medically necessary." (AR at 486.) Accordingly, the Court REVERSES Defendant's denial and REMANDS the claim for a determination of medical necessity.

//

### III.  CONCLUSION

Based on its findings of fact and conclusions of law, the Court concludes that Defendant incorrectly denied Plaintiff's claim on the basis that it is "experimental and investigational" under the terms of the Plan.  Accordingly, the Court **REVERSES** Defendant's decision to deny Plaintiff's claim and **REMANDS** the claim for a full review of medical necessity.  The Court **VACATES** the December 11, 2023 hearing.

**IT IS SO ORDERED.**